UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                                   Chapter 11

CINCINNATI TERRACE ASSOCIATES, LLC                   Case No. 21-41548 (ESS)

                                        Debtor.
-------------------------------------------------------------x

## DEBTOR'S PLAN OF REORGANIZATION

Cincinnati Terrace Associates, LLC (the "Debtor") hereby proposes the following Chapter 11 plan of reorganization (the "Plan") pursuant to Title 11 of the United States Code (the "Bankruptcy Code"), and covenants as follows:

### ARTICLE I

### OVERVIEW OF THE PLAN

1.1. The Debtor intends to seek a third-party buyer for its Hotel Property (defined below) and is filing this Plan in contemplation of obtaining a stalking horse and selling the Debtor's hotel property at 15 West Sixth Street, Cincinnati, Ohio (the "Hotel Property") (formally known as the Terrace Plaza Hotel), either under an asset sale or a sale of the Debtor's membership interests (a "Sale" or "Sale Transaction"). The Sale shall be free and clear of all Claims, liens, taxes and interests pursuant to 11 U.S.C. §363(b) and (f) and §1123. The specific time, terms and conditions of the Sale shall be established at a future date by the Bankruptcy Court pursuant to a Bidding Procedures Order (defined below) to be entered on notice to all creditors after a suitable "stalking horse buyer" is procured. The Hotel Property shall be extensively marketed by a local broker to be retained by the Debtor's bankruptcy estate. At this juncture, the Hotel Property is largely vacant, and subject to a consent order with the City of Cincinnati requiring certain repairs and maintenance (the "Consent Order"). The Consent Order

shall be assumed by the Debtor and carried forward pending a Sale or Sale Transaction. The Debtor has recently retained West Shell Commercial Inc. d/b/a Colliers International/Greater Cincinnati as day-to-day on-site manager pursuant to Order dated August 25, 2021 (ECF #40).

1.2. This Plan is designed to provide a mechanism for distributing the Sale proceeds to the holders of Allowed Claims against the Debtor. Any surplus proceeds remaining after the payment of Allowed Claims shall be distributed as surplus to Equity Holders. Also, in conjunction with the Sale process, the Debtor reserves the right to pursue an adversary proceeding or objection (the "Objection") to the mortgage Claim of TBG Funding LLC (the "Lender"), challenging the Lender's entitlement to default interest charges, and other costs and expenses. The anticipated Objection shall be based upon, *inter alia,* equitable defenses relating to the Lender's failure to honor an additional loan commitment, and refusal to grant an extension of the maturity date of the loan. The Hotel Property shall be transferred to a third-party buyer following confirmation of the Plan to gain the benefit of the transfer tax exemptions pursuant to 11 U.S.C. §1146(a).

## ARTICLE II

## DEFINITIONS

2.1. **"Administrative Expense Claim"** means a Claim for the costs and expenses of administering the Chapter 11 case Allowed by the Bankruptcy Court, including: (a) payment or reimbursement for the actual and necessary costs and expenses incurred in preserving the Hotel Property; and (b) compensation for all professional services rendered to the Debtor's estate, as Allowed and awarded by the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code.

2.2. **"Allowed"** means with reference to any Claim or Interest: (a) any Claim or Interest as to which no objection to allowance has been interposed on or before the Effective Date or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder; (b) any Claim or Interest expressly deemed Allowed by the Debtor's Bankruptcy Schedules; or (c)

any Claim or Interest deemed Allowed by agreement of the holder of such Claim or Interest and the Debtor.

2.3. **"Auction Process"** means the sale of the Property to be conducted in accordance with the Bidding Procedures Order to be entered by the Bankruptcy Court at a future date predicated upon an anticipated stalking horse buyer to be designated by the Debtor.

2.4. **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of New York.

2.5. **"Bidding Procedures Order"** means an Order to be entered by the Bankruptcy Court approving an anticipated asset purchase agreement for the Hotel Property (the "APA") or the Sale of the Debtor's membership interests predication upon the funding of a 100% plan for creditors.

2.6. **"Bankruptcy Schedules"** means the schedules of assets and liabilities, lists and statements of financial affairs, together with any amendments thereto filed by the Debtor pursuant to Bankruptcy Rule 1007.

2.7. **"Claim"** means a right to payment as set forth in § 101(5) of the Code.

2.8. "**Claims Bar Date"** means August 30, 2021, which is the date that has been set by the Bankruptcy Court by which Creditors other than Governmental Units are required to file Proofs of Claim.

2.9. **"Confirmation Fund"** means the fund to be established from the net proceeds of Sale to be maintained by the Disbursing Agent for payment of distributions hereunder.

2.10. "**Confirmation Hearing"** means the hearing(s) at which the Bankruptcy Court considers approval of this Plan pursuant to 11 U.S.C. §1129.

2.11. "**Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

2.12. **"Disbursing Agent"** means Goldberg Weprin Finkel Goldstein as the Debtor's bankruptcy counsel.

2.13. "**Disputed Claim**" means:

(a) any Claim that is listed in the Debtor's Bankruptcy Schedules as being disputed, contingent or unliquidated with respect to which no proof of claim has been timely filed; and

(b) any Claim with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period fixed by the Bankruptcy Court.

2.14. "**Effective Date"** means the date on which a closing occurs relating to the Hotel Property to a designated purchaser pursuant to this Plan or the date on which a closing occurs

relating to the sale and assignment of the Debtor membership interests to a designated purchaser which generates sufficient proceeds to pay and fund a 100% dividend to all creditors.

2.15. "**Equity Interest**" means the membership interest of the Debtor held by Cincinnati Terrace Member LLC and JNY Capital Holdings LLC.

2.16. "**Petition Date**" means June 9, 2021, the date on which the voluntary Chapter 11 petition was filed by the Debtor.

2.17. "**Plan**" means this chapter 11 plan, including all modifications, supplements, appendices, and schedules hereto.

2.18. **"Priority Claim"** means all Claims that are entitled to priority pursuant to Bankruptcy Code § 507(a).

2.19. **"Secured Claim"** means a Claim collateralized by a mortgage lien or security interest encumbering the Hotel Property.

2.20. "**Transfer Taxes**" means all deed, stamp or transfer taxes imposed by the City of Cincinnati, County of Hamilton or State of Ohio relating to the conveyance of the Hotel Property.

2.21. **"Unsecured Claim"** means an Allowed general Claim held by a vendor or service provider that is not entitled to priority under the Bankruptcy Code0.

2.22. **"Unsecured Creditor"** means the holder of an Unsecured Claim.

2.23. **"U.S. Trustee Fees"** means fees payable pursuant to 28 U.S.C. § 1930.

## ARTICLE III

## TREATMENT OF UNCLASSIFIED CLAIMS

3.1. All Allowed Administrative Expense Claims (other than Professional Fee Claims) accruing as of the Effective Date and not otherwise paid by the Debtor in the regular course of business shall be paid in full on the Effective Date by the Disbursing Agent from the proceeds generated from a Sale of the Hotel Property or Sale Transaction involving the Debtor's membership interests.

3.2. All retained Professionals seeking compensation for services rendered on behalf of the Debtor's bankruptcy estate shall an application for final allowances of compensation and

reimbursement of expenses no later than thirty (30) days after the Effective Date. All Professionals shall be paid in the amounts awarded by the Bankruptcy Court.

# ARTICLE IV

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. <u>Summary</u>

4.1. The categories listed below classify Claims against the Debtor for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**Summary of Classification and Treatment of Claims and Equity Interests**

| Class | Designation | Impaired |
|---|---|---|
| Class 1 | Real Estate Tax Claims | No |
| Class 2 | Secured Claim of the Lender | No |
| Class 3 | Unsecured Claims | Likely no, if the Sale generated sufficient funds to pay allowed Unsecured Claims in full. |
| Class 4 | Equity Interests | Yes |

### B. <u>Classification, Treatment and Voting</u>

4.2. **Class 1 — Real Estate Tax Claims**

<u>Classification:</u> Class 1 is comprised of Allowed Real Estate Tax Claims held by the City of Cincinnati, County of Hamilton, or State of Ohio.

<u>Treatment:</u> The holders of Allowed Class 1 Claims shall receive a cash distribution on the Effective Date equal to the Allowed amount of their respective Real Estate Tax Claims.

<u>Voting:</u> Class 1 is Unimpaired.

4.3. **Class 2 — Lender's Secured Claim.**

<u>Classification:</u> Class 2 is comprised of the Lender's allowed Secured Claim.

Treatment: The Lender shall receive a cash dividend on the Effective Date equal to the allowed amount of its Secured Claim, projected to be at least $7.0 million, plus allowed interest, default interest, advances and fees. In the event some or all of the Lender's Secured Claim is subject to a dispute and challenge on the Effective Date, the Debtor shall pay all undisputed amounts to the Lender in full on the Effective Date, and establish a reserve with the Disbursing Agent for all amounts then in dispute from the net proceeds of the Sale. This reserve shall be held by the Disbursing Agent in an interest bearing escrow account pending the final determination of any challenge to the Lender's Secured Claim.

Voting: Class 2 is unimpaired, since the Debtor shall not entertain a Sale Transaction that does not generate sufficient proceeds to pay the Lender's allowed Secured Claim in full.

### 4.4. **Class 3 — Unsecured Claims**

Classification: Class 3 is comprised of Unsecured Claims filed by contractors, vendors and service providers.

Treatment: Each holder of an Allowed Unsecured Claim shall receive, in full and final satisfaction of such Claims, a *pro rata* distribution after the payment of Administrative Expense Claims, Class 1 and Class 2 claims, up to 100% of their Allowed Claims, together with interest at the federal judgment rate.

Voting: Class 3 is potentially impaired, depending on the final amounts related from a Sale Transaction.

### 4.5. **Class 4 — Equity Interests**

Classification: Class 4 is comprised of the Equity Interests.

Treatment: Each holder of an Equity Interest shall receive a pro-rata share of the surplus proceeds, if any, after payment, in full, of Administrative Expense Claims, and all allowed Class 1, 2 and 3 Claims.

Voting: Class 4 is unimpaired.

## ARTICLE V

## IMPLEMENTATION OF THE PLAN

5.1. **A. Implementation**. The Plan shall be implemented by a Sale or Sale Transaction and the establishment of the Confirmation Fund and related reserves on the Effective Date by the Debtor with the Disbursing Agent. The Confirmation Order shall constitute an order of the Bankruptcy Court authorizing the Debtor to sell the Hotel Property or fund the Plan in the event of a Sale Transaction involving the Debtor's membership interests, for the approved purchase price, with all proceeds to be paid to Creditors as provided herein.

The Confirmation Order shall, *inter alia*, authorize the Debtor as follows:

(a) as applicable, to convey fee simple title to the Hotel Property pursuant Sections 363(b) and (f), 1123(a)(5)(D) and 1141(a) and (c) of the Bankruptcy Code, free and clear of all liens, Claims, taxes, encumbrances or other interests (other than permitted encumbrances, if any); and

(b) pay all Allowed Claims in full in accordance with the terms of this Plan.

**B. Discharge of Obligations.** Except as otherwise expressly provided, and subject to payment, receipt and collections of distributions hereunder, any mortgages, liens, notes, bonds, agreements, instruments or documents, or otherwise, evidencing or creating any indebtedness, or other obligations of the Debtor that relate to the Hotel Property, shall be deemed fully paid and canceled.

D.    **Post-Closing Date Transactions.**  On or after the Effective Date, the Disbursing Agent is hereby authorized to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to implement the Plan.

5.2.    **Transfer Taxes.**  Pursuant to Section 1146(a) of the Bankruptcy Code, the Sale of the Hotel Property shall be exempt from the payment of any deed or transfer taxes arising under city or state law.

5.3.    **Post-Confirmation Management.**  The Reorganized Debtor shall continue to be managed by David Goldwasser and FIA Capital Partners LLC.

5.4.    **Rights and Powers of the Disbursing Agent.**  The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to implement the Plan, (ii) direct all distributions contemplated hereunder be made; and  (iii) prosecute, settle and enforce all causes of action and Claims on behalf of the Debtor's estate.

5.5.    **Assumption of Consent Order.**  All remaining terms and conditions of the Consent Order shall be assumed and completed by the Debtor or purchasers of the Debtor's Hotel Property following the Effective Date.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

6.1.    **Disbursements**. All distributions under the Plan shall be made by the Disbursing Agent with appropriate reserves to be established with respect to Disputed Claims (*i.e.* those Claims, in whole or part, under objection as of the Effective Date).

6.2.    **Claim Objection Deadline**.  Unless otherwise ordered by the Bankruptcy Court, only the Debtor has standing to file and prosecute an objection to any Claim in the bankruptcy

case. The objections to Claims shall be served no later than ten (10) business days after the Effective Date.

6.3. **No Distribution Pending Allowance**. Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Disputed Claim are resolved by stipulation or Final Order.

6.4. **Unclaimed Distributions**. If a distribution to the holder of any Allowed Claim is returned as undeliverable or unclaimed, the distribution shall be forfeited and revert back to the Reorganized Debtor (*i.e.* the Debtor after confirmation).

6.5. **Disputed Claims Reserves**. From and after the Effective Date, and until such time as a Disputed Claim(s) has been compromised, settled or determined by Final Order, the Disbursing Agent shall establish and maintain a reserve account (the "Claims Reserve") necessary to ensure that each holder of a Disputed Claim shall receive payment in full in accordance with the provisions of the Plan in the event such Claim is Allowed in the maximum amount claimed. At such time as, and to the extent that, any Disputed Claim becomes Allowed by Final Order, in whole or in part, the Disbursing Agent shall utilize amounts held in reserve to make payment to the holder of such Allowed Claim. Following the payment, satisfaction or resolution of all Disputed Claims any amounts remaining in the Claim Reserve shall be transferred to the Disbursing Agent for distribution under the Plan to other creditors or equity interests.

# ARTICLE VII

## PROCEDURES FOR RESOLUTION OF DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS

7.1. **Prosecution of Objections to Disputed Claims.** The Disbursing Agent shall (i) be responsible for pursuing any objection to the allowance of Claims, including the Objection to the Lender's Secured Claim; and (ii) invoke all rights equitable and other defenses that are held by the Debtor with respect to any Disputed Claim.

7.2. **Estimation of Claims.** The Debtor shall have the right to seek an order of the Bankruptcy Court, after notice and a hearing (which notice may be limited to the holder of a Disputed Claim and the United States Trustee, and which hearing may be held on an expedited basis), estimating for final distribution purposes any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor previously objected to such Claim.

# ARTICLE VIII

## RETENTION OF JURISDICTION

8.1. **Retention of Jurisdiction.** The Bankruptcy Court shall retain jurisdiction until the case is closed to perform the following:

(a) Ensure that the Plan is fully consummated, and to enter any Order pursuant to section 1142(b) of the Bankruptcy Code;

(b) Resolve all matters arising under or relating to the Plan, including, without limitation, the enforcement, interpretation and any issues or dispute relating to a Sale or Sale Transaction;

(c) Allow, disallow, determine, liquidate or classify, any Secured or Unsecured Claims, including, without limitation, the resolution of any request for payment of any Administrative Expense Claims, the resolution of any and all objections to the allowance any Claims, and the resolution of any adversary proceeding;

(d) Grant or deny any and all applications for allowance of compensation and reimbursement of expenses by the Professionals retained during the bankruptcy case;

(e) Resolve any motions or applications pending on the Effective Date;

  (f) Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the Plan;

  (g) Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, deeds, instruments and other agreements or documents created in connection with the Plan or to enforce all orders, judgments, injunctions, and rulings entered in connection with the bankruptcy case;

  (h) Issue any orders or take such other actions as may be necessary or appropriate to restrain interference by any person or entity with consummation or enforcement of the Plan; and

  (i) Enter a Final Decree concluding the bankruptcy case.

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

9.1. **Orders in Aid of Consumation**.  Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of implementation the Plan.

9.2. **Compliance with Tax Requirements**.  In connection with the Plan, the Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; provided, however, that the transfer of the Property shall not be subject to any state or local transfer tax to the fullest extent provided under section 1146(a) of the Bankruptcy Code.

9.3. **Due Authorization by Creditors**.  Each and every Creditor who accepts a distribution provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distribution provided for in the Plan and that there are no outstanding liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

9.4. **Filing of Additional Documents**. Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

9.5. **Section Headings**. The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

9.6. **Computation of Time**. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.7. **Successors and Assigns**. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or permitted assign of such entity.

9.8. **Notices**. All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a) to the Debtor at: Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 21st Floor, New York, NY 10036, Attn: Kevin J. Nash, Esq. (knash@gwfglaw.com);

(b) if to any Creditor at (i) the addresses set forth on the respective proofs of claim filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Debtor after the Effective Date; or (iii) the address reflected in the Bankruptcy Schedules if no proof of claim is filed and the Debtor has not received a written notice of a change of address; and

(c) if to any entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

9.9.   **Governing Law**.  The rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the Bankruptcy Code and Rules and the laws of the State of Ohio, as applicable.

9.10.   **Other Actions**.  Nothing contained herein shall prevent the Debtor from taking such actions as may be reasonably necessary to implement the Sale, although such actions may not specifically be provided for within the Plan.

9.11.   **Payment of Statutory Fees**.  All fees payable pursuant to 28 U.S.C. §1930(a) shall be paid until entry of an order closing the Chapter 11 case.

9.12.   **Modification of Plan.**  The Plan may be amended or modified by the Debtor (a) before the Confirmation Date, to the extent permitted by Section 1127 of the Bankruptcy Code; (b) after the Confirmation Date and prior to substantial consummation of the Plan, as defined in Section 1101(2) of the Bankruptcy Code, to the extent the Debtor institute proceedings in the Bankruptcy Court, pursuant to Section 1127(b) of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order or to accomplish such matters as may be necessary or appropriate to carry out the purposes and effects of the Plan. The Debtor also reserves the right to modify or amend the Plan upon a determination by the Bankruptcy Court that the Plan is not confirmable pursuant to Section 1129 of the Bankruptcy Code to the extent permissible under Section 1127 of the Bankruptcy Code without the need to re-solicit acceptances.

9.13.   **Section 1146 Exemption.**  Pursuant to Section 1146(a) of the Bankruptcy Code, the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of or in connection with, this Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising hereunder shall

not be subject to any document recording tax, mortgage recording tax, stamp tax or similar government assessment, and the appropriate state or local government official or agent shall forego the collection of any such tax or government assessment.

10.14.  **Closing of the Chapter 11 Case.  P**romptly upon substantial consummation of the Plan, the Debtor shall file with the Bankruptcy Court all documents required by the Bankruptcy Rules and any applicable orders of the Bankruptcy Court to close the Chapter 11 Case.

Dated: New York, New York
      September 6, 2021

CINCINNATI TERRACE ASSOCIATES LLC

GOLDBERG WEPRIN FINKEL
GOLDSTEIN LLP
Attorneys for the Debtor
1501 Broadway, 21st Floor
New York, NY 10036

By:  /s/ David Goldwasser, Manager

By:  /s/Kevin J. Nash